## THE STATE v. GEDDIS.

1. **Practice:** CONTINUANCE: EVIDENCE. An admission that witnesses, if present, would testify as stated in an application for a continuance based upon their absence, does not preclude any legal objection which might be made to the testimony if it were offered by the witnesses themselves in court.

2. **Evidence:** OPINION OF WITNESS. A witness who has not been shown to be an expert cannot be permitted to testify respecting the mental condition of one who pleads insanity as a defense.

3. ——: ——: ERROR WITHOUT PREJUDICE. No error can be predicated upon the erroneous overruling of an objection to the statement of a hypothetical case to an expert witness, when the witness declines to answer the question.

4. ——: INSANITY: BURDEN OF PROOF. The law presumes the sanity of a person. and the burden of proof is upon him who seeks relief from a legal obligation on the ground of insanity.

5. **Practice:** SPECIAL INTERROGATORIES: INSTRUCTION. Where special interrogatories are submitted to a jury, it is proper for the court to instruct the jury what shall be the form of the answers to express the facts found.

6. ——: INSANITY: CIVIL ACTION. When insanity is urged as a defense in a civil action, the same rules govern the determination of the facts as would prevail in a criminal trial involving the same question.

7. **Instruction**: INSANITY. Insanity is an unusual, unnatural and exceptional condition; and the jury were properly instructed to the effect that they should not find such a fact " except upon proof of a reliable character and which satisfies the mind."

8. ——: PRACTICE. Instructions should be regarded as a whole, and if correct when thus regarded, objections to a part as erroneous will not be sustained.

9. **Insanity**: WHEN NOT A DEFENSE. Insanity can only be pleaded as a defense when the act to be excused was the direct result of that mental condition. There may be a temporary or partial insanity, or a mental unsoundness, not inconsistent with mental responsibility.

*Appeal from Jasper District Court.*

WEDNESDAY, DECEMBER 29.

THIS action is brought to recover for breaches of a certain bond made by the defendants in words and figures as follows:

" STATE OF IOWA, Jasper County, ss:

"An order having been made on the 14th day of June, 1874, by E. W. Mitchell, justice of the peace of said county, that C. S. Geddis be held to give security to keep the peace, and especially toward George Fry, Mary Fry, and Delia Fry, in the sum of five hundred dollars: Now, therefore, we, C. S. Geddis as principal, and S. G. Geddis as surety, do undertake that said C. S. Geddis shall be and appear before the next term of the District Court of said county and abide the order of said court in the matter, and shall in the meantime keep the peace, especially toward George Fry, Delia Fry and Mary Fry, then this obligation to be void. And if said C. S. Geddis fail to perform either of these conditions, then we will pay to the State of Iowa the said sum of five hundred dollars.      " C. S. GEDDIS,

" July 14, 1874.          " S. G. GEDDIS.

" Filed July 14, 1874, and approved by the court, and defendant discharged.

         "E. W. MITCHELL, J. P."

The petition alleges, as breaches of this bond, that said C. S. Geddis failed to appear at the District Court according to the terms of the bond, and failed to keep the peace toward the persons therein named, but on the contrary that he attempted to take the life of said Mary Fry with a pistol and other deadly weapons.

The answer of S. G. Geddis admits the allegations of the petition in respect to the execution of the bond and the breaches alleged, and seeks to avoid the same by pleading that, at the time of and previous to the said breaches, the said C. S. Geddis was "*non compos mentis,* and entirely insane," and that, therefore, no liability has accrued against the defendants on the bond. It is not alleged that the defendant C. S. Geddis was *non compos mentis,* when the bond was executed.

The cause was tried to a jury, resulting in a verdict and judgment for the State. The defendant S. G. Geddis appeals.

*R. A. Sankey,* for appellant.

When it is admitted that witnesses, if present, would testify as stated in affidavits for continuance, such affidavits are competent evidence. (*State v. Sater,* 8 Iowa, 424; *Strong v. Hart,* 7 Id., 485.) Upon the question of the admission of evidence, see *Pelamourgcs v. Clark,* 9 Iowa, 14; *Clark v. The State,* 12 Ohio, 483; *Gibson v. Williams,* 4 Wend., 320; *Roe v. Taylor,* 45 Ill., 485. Where the defense is insanity, testimony respecting the conduct and conversation of the defendant is competent. (Roscoe's Crim. Ev., 23; 1 Greenl. on Ev., §§ 102, 108, 440; Starkie on Ev., § 28; Phillips on Ev., 3d ed., 189; *Pidcock v. Potter,* 68 Pa. St., 342.) The opinion of an expert can be asked only respecting the facts before the jury; a hypothetical case, unlike the one at bar, cannot be proposed to him for an opinion thereon. (3 Greenl. on Ev., § 5; *Commonwealth v. Rogers,* 7 Met., 505.) If defendant's insanity is once established, it rests with the plaintiff to show his sanity at the time of the commission of the offense. (2 Greenl. on Ev., 370; *State v. Felter,* 32 Iowa, 53; *State v. Crawford,* 11 Kan., 32; *People v. McCann,* 16

N. Y., 58.)   An instruction must be pertinent and applicable to the facts. (*Price v. Mahony*, 24 Iowa, 582; *Smith & Nelson v. Bristol*, 33 Id., 24; *State v. Corrette*, 12 Id., 358.) The jury must determine for itself whether it will accept any portion of the statements of an impeached witness, whether corroborated or not. (Starkie on Evidence, 454; *Freeman v. The People*, 4 Denio, 35; *Callanan v. Shaw*, 24 Iowa, 446.) Moral insanity is a defense where it is connected with a mental derangement, which may be proved or inferred from the moral disorder. (Wharton & Stille, Med. Jur., § 61.) The burden of proof never shifts; it is upon the government throughout, and the jury must be satisfied beyond a reasonable doubt of the affirmative issue presented by the government. (*Com. v. McKie*, 1 Gray, 61; *People v. McCann*, 16 N. Y., 70.)

*M. E. Cutts, Attorney General*, for the State.

In New York, the opinion of a witness concerning the insanity of defendant must be limited to the facts to which he testifies: he cannot express an opinion upon the general question of defendant's insanity. (*Clapp v. Fullerton*, 34 N. Y., 190; *Real v. People*, 42 Id., 270; *Henlett v. Wood*, 55 Id., 634; *O'Brien v. People*, 36 Id., 267.) In Maine and Massachusetts, witnesses other than experts are not allowed to express an opinion upon the subject of insanity. (*Com. v. Wilson*, 1 Gray, 337; *Wyman v. Gould*, 47 Me., 159.) In this State the court has indicated a tendency to adopt the New York rule. (*Pelamourges v. Clark*, 9 Iowa, 1.)

MILLER, CH. J.—I.   Upon the cause being called for trial in the court below, the defendant made an application for a continuance on the ground of the absence of certain witnesses. The counsel for the State admitted that if the witnesses named in the application were present in court they would testify as stated therein, whereupon the court overruled the application and the trial proceeded. The defendant in support of the averments of his answer offered to read the affidavits for continuance as the testimony of the

*1. PRACTICE: continuance: evidence.*

witnesses named therein.    On the objection of the State certain portions of the affidavits were excluded.    To this ruling defendant excepted and this is the first assigned error.

It is urged that after counsel for the State had admitted that the witnesses named in the application for continuance would if present in court testify as stated therein, he was estopped from objecting to the reading of the statements in evidence.    The admission made by the plaintiff is not required by the statute to be of the competency or relevancy of the statements, but only that if the witness was present he would so testify, and does not preclude any legal objection which might be made if the witness himself were present. See Code, section 2751.    The parts excluded are matters of opinion and other matters which the witnesses would not be competent to • testify to if present.    The other matters of fact which were relevant to the issue were allowed to be read.    For example, in the testimony of John E. Detton it is stated that "at and for a short time previous to the occurrence with Mary Fry," the defendant (*was insane*) and became very much excited and entirely uncontrollable whenever said Mary Fry or any of her family was spoken of in his hearing, or if any of them were in his presence."    The words, "was insane," were stricken out and the other part of the statement was read to the jury as the testimony of the witness.    The witness was not competent to testify that Geddis "was insane;" that was a question for the jury to determine from the evidence before them.    *The State v. Felter*, 25 Iowa, 67.    This is the character of the ruling of the court in rejecting parts of the statements of each witness named in the application for continuance.    There was no error therein.

II.    On the trial the defendant called J. C. Cook as a witness in his behalf, who testified of his acquaintance with C. S. Geddis for several years previous to the execution of the bond sued on, a part of which time said Geddis had been a law student in the office of the witness.    The witness was then asked by defendant's counsel to " state what his (Geddis') mental condition was during the summer of 1874 —any time during the month of June or July."    To this

2. EVIDENCE: opinion of witness.

question the State objected, on the grounds that the shooting
of Miss Fry occurred on the 9th of August, and that the wit-
ness was not competent to give an opinion. The objection
was sustained, and this ruling is assigned as error. The
objection was properly sustained on at least one of the grounds
assigned. The witness was not shown to be competent to
state an opinion as to the mental condition of Geddis, and
that was what the question called for. There was no error in
this ruling.

III. The defendant, S. G. Geddis, was called as a witness
in his own behalf and testified to the actions and conduct of
C. S. Geddis from the 14th of July, 1874, to the 9th of
August of the same year, this being the interval between the
execution of the bond and the shooting of Miss Fry by C. S.
Geddis, and the witness said: "I could always control him up
to the time that bond was given." He was then asked by his
counsel to state how it was after the bond was given. This
was objected to by the State and the objection sustained. Of this
ruling complaint is made. There was no prejudicial error in
this ruling, for notwithstanding the court sustained the objec-
tion the witness proceeded to state further and fully and all
about the conduct, actions, and the appearance of his son after
the execution of the bond, together with his own opinion and
the opinion of his wife thereon. In addition to this the State
called out on cross-examination every fact within the knowl-
edge of the witness upon this subject, more fully, if possible,
than had been done on the examination-in-chief. If there was
error in the ruling most clearly no prejudice resulted there-
from. The same is true, also, in reference to the question
overruled when this witness was recalled.

IV. On the trial the defendant called as a witness Dr.
3. ——: ——: B. M. Failor, who testified, among other things,
error without
prejudice. that "a man might be sane upon all subjects
but one, and insane upon that," whereupon on cross-exam-
ination the plaintiff stated a hypothetical case and asked
the opinion of the witness thereon, to which counsel for
defendant objected. The objection was overruled and this
ruling is assigned as error. Whether any of the objections

urged to the question were well taken or not we need not decide, since the witness did not give an opinion upon the hypothetical facts stated. His answer was that he would want to examine him further before deciding him a monomaniac, even assuming the truth of the facts stated in the question. No prejudice, therefore, resulted to the defendant even if there was error in the ruling, which we do not hold.

V. The fourth error assigned consists in the giving of the

4. ——: insanity: burden of proof. first, second, third, fourth and fifth paragraphs of the court's charge to the jury. The objection urged against the first paragraph is that it requires proof of the insanity of C. S. Geddis beyond a reasonable doubt. This is a misapprehension of the import of the charge. The substance of the charge on this point is that the law presumed the sanity of Geddis from the time of giving the bond; that the burden of proving his insanity rested upon the defense, and that this presumption and the evidence of sanity given by the State must be overcome by a preponderance of evidence of insanity. This instruction is clearly correct and it is not vulnerable to the objection urged against it. See *The State v. Felter*, 32 Iowa, 49.

VI. The court submitted to the jury the following interrogatories:

"1. Was C. S. Geddis insane at the time of his alleged

5. PRACTICE: special interrogatories: instruction failure to keep the peace, set out in plaintiff's petition, and was such failure to keep the peace the result of such insanity?

"2. Was C. S. Geddis insane at the time of the alleged failure to appear before the District Court, and was such failure to appear the result of such insanity?"

The court instructed the jury in respect to these interrogatories, that if Geddis was not insane at the time of the admitted breaches of the bond, both questions should be answered "no," that if he was insane but such breaches were not the result of his insanity they should answer both questions "no." And if the assault was the result of his insanity, and his failure to appear at court was not the result of insanity, then they

should answer the first question "yes," and the second one "no."

It is objected that this instruction assumes that there was evidence of a change in the mental condition of C. S. Geddis, between the time of the shooting of Miss Fry, and the time when he was required to appear at court. We are unable to discover any error in this instruction. It merely gives the jury proper directions as to the manner of answering the interrogatories submitted, and to which there was no objection. If it was proper to submit these separate interrogatories, it was proper for the court to instruct the jury as to the mode or manner of answering each one according as they find the facts to exist.

VII. The third instruction is in the language of this court in the case of *The State v. Felter* (first trial), 25 Iowa, 67, as follows:

" If the act of Geddis in assaulting the party, which is admitted to constitute a breach of the bond, was caused by mental disease or unsoundness which dethroned his reason and judgment with respect to that act, which destroyed his power rationally to comprehend the nature and consequence of that act, and which overpowering his will irresistibly forced him to its commission, then he is not legally answerable therefor. But if you believe from all the evidence and circumstances that he was in possession of a rational intellect and sound mind, and allowed his passions to escape control, then though passion may for the time being have driven reason from her seat and usurped it, and have urged him with a force at the moment irresistible to desperate acts, he cannot claim for such acts the protection of insanity."

6. ——: insanity: civil action.

Appellant does not question the legal soundness of this instruction, but insists that this being a civil action it is not applicable as in a criminal case in which the language was used by this court. It must be remembered, however, that the fact of insanity is the same in a civil action as in a criminal prosecution, and that it is relied on in each case as a complete defense. The question in either case being whether the defendant was sane or insane when he did, or omitted, the act

for which he is sought to be held responsible. The issue is the same as to this question in each class of cases.

VIII. Appellant complains of the last clause of the fourth paragraph of the charge. The whole paragraph is as follows:

"You are to look at the evidence in this case in a common sense light, and to judge it by that experience and observation of human affairs of which you are possessed as individual members of society, and will endeavor to arrive at the truth as the evidence shows it to be. If the claim made by either party is unusual and unnatural, out of the ordinary course of affairs, you are not required to take the same for granted upon slight evidence; nor should you so find except upon proof of a reliable character and which satisfies the mind."

7. INSTRUC-TION: insanity.

It is urged that the court erred in assuming that the defense of insanity was unusual and unnatural, out of the ordinary course of affairs. We think the evident meaning of the court by this language, and the way it was most likely to strike the minds of the jury, was that where the fact set up as a defense is "unusual and unnatural and out of the ordinary course of affairs," it was not to be granted upon slight evidence, and we are quite clear that this is right in its application to this case. The condition of sanity is usual and natural, and insanity is unusual and unnatural. Sanity is according to the ordinary course of affairs, insanity is out of this course. Sanity is the normal condition of mankind, insanity is abnormal and exceptional.

IX. Appellant makes extracts from the fifth paragraph of the charge to which he urges objections. We need only say that when the whole paragraph is taken together no error is found therein. The very thing of which appellant complains is explained and cured by that part of the paragraph which he leaves out of his argument. He complains that the court directed the jury what weight to give to the testimony of an impeached witness, and insists that the jury are the sole judges of his credibility. This is exactly what the court instructed in the same paragraph.

8. ——: practice.

X. The defendant asked the court to give the following instructions:

"If insanity has once been established by the evidence, then the presumption is that it has continued, and you will be justified in so finding, unless the State has proved to the contrary. And if the evidence shows that C. S. Geddis was insane at and about the time of the difficulty with the Frys, in which Mary Fry was injured, it will be presumed to still continue unless rebutted by proof."

Which the court gave with the following modification:

(By the court.) "This is so, unless the insanity was temporary, or only partial, or in relation to some particular matter, in which cases it might not. To have this effect the insanity must be general and permanent in its character, and if but partial or in relation to a particular matter, and there were lucid intervals, then it will be presumed to continue only in relation to such matters and not as to other or different matters or to affect acts having no connection with such partial or particular insanity."

We are of opinion that there was no error in this modification, but whether there was or not is entirely immaterial, for the jury by their negative answers to the special interrogatories submitted to them found that the defendant, C. S. Geddis, was not "insane at and about the time of the difficulty with the Frys, in which Mary Fry was injured." These findings show that the fact of insanity did not exist at the time mentioned in the instruction asked, and therefore, no presumption of continued insanity would follow. The instruction without the modification could have done the appellant no more good, than with it. He was not prejudiced by the modification.

XI. Several instructions were asked by the defendant and refused by the court, and their refusal is assigned as error. All of the instructions refused were substantially given in the charge of the court, except the fifth, which is as follows: "It only requires a preponderance of the evidence on the question of mental unsoundness of C. S. Geddis, at the time of the violation of the bond complained of, to find for defendant.

And if you find that the preponderance of the evidence shows a mental unsoundness in said C. S. Geddis at the time the breaches of the bond occurred, then you will find for the defendant." There was no error in refusing to give this instruction. There might be "*a mental unsoundness*" in Geddis, found by the jury and still they might not be authorized in finding for the defendant.

They could not find for defendant unless the evidence also showed that the acts constituting the alleged breaches of the bond were caused by the mental unsoundness of said Geddis. An unsoundness of mind may be partial only and not on the subject or subjects that would lead to or result in the breaches of the bond alleged. The instruction, therefore, was incomplete and misleading.

XII. Lastly, it is urged that the verdict is not supported by the evidence. We are well satisfied with the verdict as being supported by the weight of the evidence.

The judgment will stand

AFFIRMED.