HURST v. THE C., R. I. & P. R. Co.

1. **Evidence:** TESTIMONY OF EXPERTS: HYPOTHETICAL QUESTION. An expert cannot be permitted to answer a question based upon a hypothesis which finds no support in the evidence.

2. ———: LEADING QUESTION. A question is not leading if, while directing the witness' mind to the subject matter of the question, it does not suggest one kind of an answer more than another.

3. **Railroads:** NEGLIGENCE: CHANGE OF SERVICE. If the employe of a railway company is taken from his work for the company by his superior, and is directed to perform an individual service for the latter, the company is not liable for an accident occurring while he is in the performance of such service: but if he simply be taken from one place of employment to another, in the company's service, it is liable for the results of its negligence therein.

*Appeal from Madison District Court.*

FRIDAY, JUNE 14.

THIS is an action for the recovery of ten thousand dollars for alleged injuries sustained by plaintiff while in the employ of defendant, as a section hand on its track, running a hand car. The petition, in substance, alleges that the hand car was not suitably constructed; that it was old and worn out; that it was overloaded; that plaintiff was compelled to occupy a dangerous position thereon, and that it was run in a careless and negligent manner. The petition further alleges that for some time prior to the injury plaintiff had been employed and had agreed to work on a section commencing three miles west of the station of Newton, and ending about three miles

Hurst v. The C., R. I. & P. R. Co.

east of the station of Colfax; that at the time of the injury plaintiff had been directed by the section boss to assist in moving the hand car off from said section to the station of Newton, whereby plaintiff was suujected to greater hazard than was contemplated in his emplyoment; that without any fault on his part he was thrown from the hand car, which ran over him, inflicting great and permanent bodily injuries. The answer, in substance, alleges that the plaintiff contributed to the injury by his own negligence, and that, at the time the accident occurred, the plaintiff was not engaged in the service of defendant, but that he, and the gang with which he was employed, had quit work for the day, and were proceeding with said hand car off of their section to Newton station, on their private personal business, and not on any business of the defendant. There was a jury trial, resulting in a verdict and judgment for plaintiff for four thousand dollars. The defendant appeals.

*Wright, Gatch & Wright*, for appellant.

*J. C. Cook*, for appellee.

DAY, J.—I. The plaintiff describes the accident and injury as follows: "I lit lengthwise of the track, and on my side and back. I tried to step, and the car caught me before I struck the ground. My foot was caught in the cogs, my leg was broken, and the car passed over me, and I was turned end over end under the car." In another portion of his testimony the plaintiff speaks of the accident and injury as follows: "In falling, my right foot was caught in the gearing, and my other leg was broken; part of the bone was mashed; both bones were broken; there was an open wound; was hurt on head, gash in side, back and top, and one on eye and on shoulder; breast was hurt in doubling under the car. The foot that was hurt gives out, gets stiff in walking; there is a large lump on the leader which gets sore in walking. The furthest I have been able to

*[margin note: 1. EVIDENCE: testimony of experts: hypothetical question.]*

walk is between two and three miles, and this takes an hour and a half. My other leg gets weak in walking; think one leg is shorter than the other; the bones seem to have a rough place which I can feel; the ankle of the leg that was broken is weak—it rocks about for want of, support; in stepping on anything slippery I have to give way to avoid hurting; the bone pains me; my breast·is weak, and carrying any weight or stooping over pains me." This is the fullest account of the injury contained in the evidence. There is no testimony describing it as of a more serious character. The evidence shows that after the accident plaintiff was carried on the. hand car to Newton, and was then placed on a freight wagon with a platform on it, and hauled up town to Bennett's house. Evidence was introduced tending to show that plaintiff, after he arrived at Bennett's, admitted that the accident resulted from his own carelessness.

As bearing upon the state of the plaintiff's mind at the time. of making this admission, the plaintiff introduced Dr. Way, a graduate of a medical school, who had been a practicing. physician about six months, and asked the following question : "Suppose a young man of good, healthy physical condition should fall down, or in riding along on a hand car should fall down in front of it, and one of his feet being taken up or caught. between the cog wheels and the platform, and ground up· about half-way, just gradually eaten off, so as to leave the large toe on and take the rest of it off, the other leg being broken, crushed, both bones of the tibia, and that in that condition,. lying with his head forward on the track, lengthwise, his feet being taken up or caught in the car with five men on it, and his. extremities being brought up so that he was doubled over in this way under the car (indicating), his head lacerated, having. wounds on the scalp, his shoulders bruised; suppose that then that young man was taken up and placed on a hand car, and, in August, taken a distance of about two miles, and about two hours after that time—that is, an hour after the occurrence—laid upon a lumber wagon, with nothing on it but

a common board platform, and taken from thence about three-quarters of a mile, and then taken off by the crowd, what would you say, doctor, to that young man's mental condition, and his capacity for intelligently comprehending and understanding what he was talking or saying with reference to this occurrence on the hand car, and how he received the injury?" This question was objected to upon the ground that the evidence does not disclose the state of facts given in the hypothetical question. The objection was overruled, and defendant excepted. The witness answered: "I don't suppose, from general principles, that he would be in a rational condition." This question should have been excluded. It presents for the opinion of the witness circumstances of which there is no evidence whatever. It contains a greatly exaggerated statement of the injury and its attendant circumstances. It is not competent to state to a witness any hypothetical state of facts of which there is no proof, and ask his opinion based upon such facts. Such proof would clearly be irrelevant and incompetent. A physician may give his opinion as to the sane or insane condition of a person's mind, and such opinion is admissible, though the witness founds it, not on his own personal observation, but on the case itself, as proved by other witnesses on the trial. But an expert cannot be allowed to give his opinion upon a case based upon statements made to him by parties out of court and not under oath. 1 Greenleaf on Evidence, § 440, and note. If an expert cannot base an opinion upon statements made to him out of court, by parties not under oath, we know of no principle upon which he should be permitted to base an opinion upon a statement made to him by an attorney in court, in the trial of a cause, which is altogether without support in the evidence.

In *Muldowney v. The Illinois Central Railway Company*, 39 Iowa, 615, it is said: "A medical man's opinion is very competent when the facts upon which it is based are testified to by himself or others, but his opinion without the facts is not competent, because he is not authorized to find or assume the facts

at his pleasure. They are to be found by the jury, and if they do not exist as he assumes, then his opinion may go for naught." If the expert may not find or assume the facts at pleasure, it must be equally improper for the attorney of a party to do so. We do not mean to say that the facts upon which the opinion of an expert is sought must be proved. It is sufficient if there be evidence tending to establish the facts. Then the jury must determine whether or not the evidence submitted proves the facts upon which the opinion is based. What we determine is, that an opinion cannot be based upon a fact of which there is no evidence.

II. Defendant read in evidence so much of the affidavit for continuance as states that Jerome Allen would swear that he saw plaintiff when he came in on the hand car, and helped remove him to the wagon, and was with him in the wagon, and that during that time he repeatedly said no one was to blame for the accident but himself, and that if he had not been trying to show off he would not have been hurt. The defendant further offered to read from said affidavit that the witness would swear that said Hurst was at that time rational and of sound mind, and made the statements fully understanding what he was saying. The plaintiff objected to this offered testimony as incompetent. The objection was sustained. The defendant excepted. It does not appear that Allen was qualified to testify as an expert. Under the doctrine of *State v. Geddis*, 42 Iowa, 264, and *State v. Stickley*, 41 Iowa, 232, we think it was not competent for Allen to state his opinion as to Hurst's mental condition.

III. The defendant introduced as a witness John Burnett, who testified as to certain admissions made by the plaintiff after the injury respecting the accident. The witness was then asked the following question: "You may state what he said, if anything, about trying to show off before the bridge hands?" This question was objected to as leading and suggestive. The objection was sustained. The defendant excepted and assigns the ruling as error. A lead-

2. ——: leading question.

ing question is one which suggests the answer desired. "In
New Hampshire it is said that a question, to be leading, must
instruct the witness how to answer, or put words into his
mouth to be echoed back, or in some way suggest the answer
desired, and that a question calling for a direct affirmative or
negative is not leading, unless it suggest one more than the
other." 1 Greenleaf on Evidence, §§ 434 and 434 a. *Spear v.
Richardson, 37 N. H., 23; Page v. Parker, 40 N. H., 47. The
question under consideration is not, we think, vulnerable to
the objection urged. If it is competent only to ask a witness
what was said at a particular time, without directing the wit-
ness to the subject deemed material, it is evident that exami-
nations would be very greatly protracted, and cases would be
greatly incumbered with irrelevant and immaterial testimony.
The rule inhibiting the asking of leading questions must be
understood in a reasonable sense, and must have a reasona-
ble construction.

Several other questions arising upon the introduction of the
testimony are presented, which we do not deem it neces-
sary to consider separately. We may say, however, that in
a number of other, not, perhaps, very important matters, the
defendant, both in the introduction of testimony in chief and
in the cross-examination of the witnesses of the plaintiff, was
confined within too narrow limits.

IV. Evidence was introduced tending to show that at the
time the injury was sustained the plaintiff and the other
employes in charge of the hand car had completed
their day's work for the defendant, and that they
were off of the section on which they had been
employed, and were going to Newton with the hand car for
provisions for the section boss. Respecting this branch of
the case the court instructed the jury as follows:

3. RAILROADS:
negligence:
change of
service.

"22. Where the employes of a railroad company volun-
tarily go off of their section on business of their own, discon-
nected from the business of the company, while such employes
are so engaged the company is not liable for any accident

or injury which may occur to them, from whatever cause the same may arise.

"23.   But where an employe of a railroad company working on a section under a foreman or boss is, by such foreman, required to go off of the section on which he contracted to work, and perform duties apparently in the line of his employment, the same liability attaches to the company for injuries received by such employe while off his proper section as while on it."

As applied to the evidence in this case we think this last instruction was calculated to mislead the jury. The doctrine is elementary, that a principal is bound by the acts of his agent only when they are within the scope of the agent's employment, or the conduct of the principal respecting the agent has been such as to furnish third persons reasonable ground for believing that the agent was acting within the scope of his employment. If the boss in charge of this section had simply taken the plaintiff off of his section to work for the defendant on another part of its road, we think the defendant might well be held liable for injuries sustained on such portion of the road through defendant's negligence. But if the plaintiff was taken off of the section to perform a service for the boss individually, we think the defendant cannot be held liable unless its course of conduct was such as to furnish a reasonable ground for believing that the section boss had authority from the company to engage the plaintiff in such employment. If this is what was meant by the court in the use of the language employed in the instruction, the principle involved in the instruction is not erroneous; but, as the case must be reversed for the other reasons assigned, we think this instruction should, upon the retrial, be so modified as to express the idea above conveyed.

REVERSED.