## SPARGUR ET AL. V. HALL.

1. **Contract:** PROCURED BY UNDUE INFLUENCE UPON A FEEBLE MIND: SET ASIDE. Contracts made between persons sustaining relations of trust and confidence, where it appears that the stronger and controlling mind has obtained an advantage, are jealously watched and guarded by courts of equity, and are set aside, unless the beneficiary shows the good faith of the transaction; and in this case, where a daughter, through undue influence, and without adequate consideration, procured from her aged and infirm mother the execution of a note, and a mortgage securing the same, *held* that the court below properly canceled these obligations upon the petition of the heirs of the mother.

*Appeal from Montgomery Circuit Court.*

THURSDAY, DECEMBER 13.

B. W. SPARGUR died intestate in the year 1880. He was the owner of a residence in the village of Villisca, and of a farm in that vicinity. Mary Spargur was his widow, and entitled to one-third of his real estate. After his death she continued to occupy the residence in the village, and Sarah M. Hall, a daughter, with her family, also occupied the residence, under a contract to board her mother for a certain compensation. Mary Spargur died in February, 1881, and some seventeen days before her death she executed to Sarah Hall a note for $800, and a mortgage upon the undivided one-third of the farm to secure the payment of the note. At the same time she made a written agreement with Sarah Hall providing for her future support.

This action was commenced by the administrator of Mary Spargur, and by the other children and heirs of B. W. and

Mary Spargur, to cancel the note and mortgage, upon the grounds that, at the time they were executed, Mary Spargur was old and feeble in body and mind, and mentally incompetent to make such a contract; and that defendant took advantage of her condition, and by undue influence and persuasions, and by false pretenses, induced her to sign said written instruments; and that the same were without consideration, and void. The cause was referred to a referee, who found for the plaintiffs, and a decree was entered canceling the note and mortgage as prayed. Defendant appeals.

*F. P. Greenlee* and *C. E. Richards*, for appellant.

*W. H. Redmon* and *W. S. Strawn*, for appellees.

ROTHROCK, J.—Mary Spargur was in her seventy-third year at the time of her death. The following extract from the finding of facts by the referee is fully supported by the evidence: "At the time of the execution of the note, the said Mary Spargur was old and in feeble health. She was suffering with rheumatism, and had been afflicted for nearly forty years with a female complaint. Her husband died nearly a year previous, after having lived many years with said Mary Spargur; that during his lifetime he transacted all the business; that she had very little knowledge of business matters; that after her husband's death she transacted none, save the matter in question; that Mary Spargur, at the date of the execution of the note and mortgage in question, had a contracting mind, but her mind, by reason of her age, infirmities and loss of her husband, was not strong; that by reason thereof, and through want of knowledge of business, she could easily be directed to erroneous results and false conclusions."

The referee found that the note and mortgage were entirely without consideration, and were executed by her by reason of misrepresentations, and without an understanding of the facts.

An important consideration in determining this case is the relation which is shown to have existed between Mary Spargur and her daughter, the defendant. The relation of confidence and trust reposed in the defendant by her mother is clearly shown by the fact that she took her daughter into her home, and relied upon her as her helper and support in her old age and infirmity. Contracts made between persons sustaining these relations of trust and confidence, where it appears that the stronger and controlling mind has obtained a conveyance of property or an obligation to pay money, are jealously watched and guarded by courts of equity, and set aside, unless the beneficiary shows the *bona fides* of the transaction. Kerr on Fraud and Mistake, 150-1-2; *Leighton v. Orr*, 44 Iowa, 679; *Tucke v. Buchholz*, 43 Id., 415. Applying this rule to the facts of this case, we think the decree of the circuit court is correct. The only showing of a consideration for the note and mortgage is that the defendant presented a claim against B. W. Spargur's estate for services rendered to him after the defendant became of age, and for money loaned to him. It is not shown that this claim was ever recognized by B. W. Spargur. It was presented against his estate, and the administrator refused to allow it. A trial was had thereon in the circuit court, and the evidence was introduced, and defendant procured a continuance in order that she might produce an account book. The account book was not produced, and the case was dismissed, and it is not shown that the claim had any validity. Just before its dismissal, the note and mortgage were executed. The evidence is very clear that Mary Spargur believed that, if the defendant's claim was prosecuted, her interest in the estate would become involved. This belief was unfounded in fact. Her interest in the real estate as widow could not be affected, by the claim. It is unnecessary to set out the evidence in detail. It is sufficient to say that we are fully satisfied with the conclusion arrived at by the referee, and with the decree of the court below.

AFFIRMED.