E. C. FOSTER et al., Appellants, v. CLYDE W. FOSTER et al., Appellees.

No. 43738.

MAY 4, 1937.

Cunningham & Scott and Louis Shneider, for appellants.

Addison M. Parker and Harold H. Newcomb, for appellees, Clyde W. and Clara Foster.

DONEGAN, J.—This is an action to set aside a deed executed by Albert W. Foster to Clyde W. Foster and Clara Foster, his wife, on the ground that the grantor was in such physical and mental condition that he was incapable of knowing what he was doing, and that the execution of said deed was procured by undue influence and fraud. The plaintiffs are three sons and a daughter of said Albert W. Foster who, with Clyde W. Foster, the defendant, constitute all the children of said Albert W. Foster, deceased. The facts are that the defendant, Clyde W. Foster, was the youngest son of Albert W. Foster. After the older brothers and sister had left home, Clyde remained with his parents and continued to live with them for three years after his marriage, which occurred about 1908. About 1911 he and his wife

rented another farm and lived by themselves for three years. They again began living with Clyde's father and mother in 1914, apparently because of the poor condition of his mother's health. The mother died in 1915 and, following her death, the father, Albert W. Foster, continued to live with Clyde and his wife until his death on October 16, 1934, at the age of 85 years.

The evidence indicates that Albert W. Foster was in good health during all the years up until about November, 1931, when he suffered a mild attack of apoplexy and had some heart trouble. He recovered very rapidly from this attack and appeared to be in normal health for a man of his age until about August 23, 1934, when the doctor who was called upon to attend him found that "he had a heart condition that was causing shortening of breath, some swelling of the ankles, and some pain about his heart." The doctor saw him on the following day, when he appeared to be a little weaker, and again saw him on the succeeding day, when he was in the same condition but weaker and more depressed. The doctor next saw him on August 31st, when his condition was similar except that his limbs were swollen more and the heart action bad. On the occasion of his first visit, the doctor ordered Mr. Foster to remain in bed, but his orders were not complied with. The next time the doctor saw him was on September 28th, at which time he was sicker than he had been in August, and he was then persuaded to go to bed. Following this visit the doctor again saw him on October 5th, 6th and 10th, and his death occurred on October 16th.

On the 26th day of September, prior to his death, Albert W. Foster executed a warranty deed covering his forty-acre homestead to Clyde W. Foster and Clara Foster, and, on the same date, and as part of the same transaction, he entered into a contract with Clyde W. Foster and Clara Foster, his wife, in which they agreed to care for and support him during the balance of his life. In addition to the deed and contract he also executed a will, which contained practically the same provisions as to the disposition of his property as were contained in the deed and contract.

Following the death of Albert W. Foster, the plaintiffs, who are the three brothers and sister of Clyde W. Foster, instituted this action in equity to set aside said deed. On the trial of the case below the court entered a decree dismissing the plaintiffs' petition at their costs and adjudging the defendants, Clyde W.

Foster and Clara Foster, to be the owners of the forty acres described in the deed. From this decree the plaintiffs appeal.

Three propositions are presented and argued as grounds for reversal of the decree entered by the trial court: 1. That, at the time of the execution of the deed in question, Albert W. Foster did not have the mental capacity necessary to execute a valid deed. 2. That the execution of the deed was procured by the undue influence of the defendants. 3. That the deed is invalid, because it is not supported by a sufficient consideration.

This is an equity action and is triable *de novo* in this court. As said in Kramer v. Leinbaugh, 219 Iowa 604, loc. cit. 606, 259 N. W. 20, 21:

"The rules of law in this class of cases have been well settled by the decisions of this court. The general rule is that the burden is upon plaintiff to establish the grantor's mental incompetency by a clear preponderance of the evidence. The same rule applies with reference to the question of fraud and undue influence. State v. Geddis, 42 Iowa 264; Leonard v. Shane, 182 Iowa 1134, 166 N. W. 373; Sutherland State Bank v. Furgason, 192 Iowa 1295, 186 N. W. 200; In re Estate of Paczoch, 202 Iowa 849, 211 N. W. 500; Crawford v. Raible, Admr., 206 Iowa 732, 221 N. W. 474; O'Neil v. Morrison, 211 Iowa 416, 233 N. W. 708; Grunewald v. Estes [Iowa], 173 N. W. 935; Bishop v. Leighty [Iowa], 237 N. W. 251."

In the cited case there was some dispute as to the burden of proof, because there was a claim that a confidential relation existed between the grantor and the grantees which, if true, would place the burden of proof upon the grantees. There is no such claim in the instant case, so that the burden is on the plaintiffs. It is likewise well-established law that, in order to sustain this burden, the mental incapacity of the grantor or of undue influence or fraud, which resulted in the execution of the deed, must be established by clear, satisfactory and convincing evidence. Bardsley v. Spencer, 215 Iowa 616, 244 N. W. 275, and cases therein cited.

Turning to the evidence, we think the plaintiffs have failed to establish any such lack of mental capacity on the part of Albert W. Foster as would make him incompetent to execute the deed in question. No attempt is here made to establish a mental condition that would amount to what is commonly known as un-

soundness of mind. The most that is claimed is that, because of his age and the ravages of the disease from which he was suffering, he was in such a weakened condition both physically and mentally, at the time that the deed was executed, that he was incapable of understanding the nature and effect of the act that he was doing. Aside from the evidence of the plaintiffs themselves, their spouses and some of their children, the evidence offered, to show the lack of mental capacity in Albert W. Foster to execute the deed, consisted of testimony given by some of his neighbors and acquaintances. None of the witnesses for the plaintiffs claimed to have seen Albert W. Foster on the day that the deed was executed. Several of those who testified that, in their opinion, he was incapable of understanding the nature and effect of the deed executed by him, based their opinion upon his condition at times following the date of the execution of the deed, while others based their opinion on his condition as observed by them during a period varying from a week to several weeks before the date of the execution of the deed. Allowing the testimony of these witnesses the greatest force to which it would be entitled, we do not think this evidence would go further than to establish that, at the times the witnesses saw Albert W. Foster, he was a very sick and a very weak man, who appeared to be unable to recognize the witnesses and took no interest in what was going on around him. As against this evidence, however, there was the testimony of other witnesses, aside from the defendants and their family, such as a neighbor and acquaintance of 46 years; the barber who shaved him a week before he died; a resident of Des Moines at whose home he visited on the 9th of September preceding his death; a farmhand twenty years of age, who worked for the defendant, Clyde W. Foster, and saw Albert W. Foster every day; a neighbor lady who saw him on different occasions during August and September up to and including the Saturday evening before he died; a Mr. Ballard, who lived in the nearby town of Carlisle, who had known Mr. Foster all his life and had seen him somewhere around the 15th to the 18th of September. Many of these witnesses testified to conversations had with him and all of them testified that, in their opinion, he was mentally competent and had the capacity to transact business. If, to the testimony of these witnesses is added that of the members of defendants' family; that portion only of the testimony of the lawyer, Bridges, who drew the deed, will and con-

tract in regard to support, as to the competency of which no objection could be sustained; and the testimony of the attending physician, who testified as a witness for the plaintiffs; we do not think there can be any doubt that the plaintiffs have failed to prove the mental incapacity of Albert W. Foster by clear, satisfactory and convincing evidence, or even by a preponderence of the evidence. Dr. Sperow, who attended Albert W. Foster during both of his illnesses, in 1931 and in 1934, and who was called as a witness by the plaintiff, would nowhere say that he considered Mr. Foster mentally incompetent to transact business, and, at the close of his testimony, as set out in appellants' abstract of record, the trial court asked him a question and received an answer, as follows:

"From your extended knowledge of this man, both before the sickness and during it, and assuming about the 26th of September, would he have had mental capacity at that time in your opinion to discuss with others the preparation of a will and the preparation of a deed and to execute those instruments with knowledge and understanding of what they were, or would his mind be so weakened or impaired that he would not be able to fully understand what he was talking about or what he was doing, in your opinion?

"A. I am of the opinion that he would know what he was doing. While his judgment might err in the condition of his mind and body, at the same time I think he would know what he was doing."

On the question of undue influence and fraud, the record contains no direct testimony whatever to show that undue influence or fraud was exercised by the defendants, or either of them. Nor, in our opinion, is there anything in the record in the nature of surrounding facts or circumstances that would be sufficient to support a finding that the execution of the deed in question was procured by the exercise of undue influence or fraud. Citation of cases is of little assistance in deciding questions of this kind. The principles of law are well-established, but much difficulty arises in applying the principles to the facts of each particular case. In order to set aside a deed on the ground that its execution was procured by undue influence or fraud, the evidence must be such as to establish that, in executing such instrument, the will of the grantor was influenced to such an extent as to

destroy his free agency. Mallow v. Walker, 115 Iowa 238, 88 N. W. 452, 91 Am. St. Rep. 158; Osborn v. Fry, 202 Iowa 129, 209 N. W. 303; Kramer v. Leinbaugh, 219 Iowa 604, 259 N. W. 20. The difficulty usually arises in cases of this kind, in determining whether the facts are such as to show that the instrument sought to be set aside was the result of undue influence and expressed the will of another person, instead of the grantor. There is no presumption that an instrument does not express the intention of the party executing it. On the contrary, the presumption is that the instrument expresses the intention and will of the party who executed it, and, in order to set it aside, the evidence presented by the party alleging undue influence or fraud must be clear, convincing and satisfactory. Sutherland State Bank v. Furgason, 192 Iowa 1295, 1. c. 1307 and 1308, 186 N. W. 200, and cases therein cited.

It is true that Albert W. Foster had been living in the home of the defendants for approximately twenty years, and that, at the time in question, he was surrounded by the defendants and members of their family, to the exclusion of all other persons during a greater part of the time. Opportunity, however, is not proof of the fact that undue influence or fraud was exercised. It is also true that Mr. Bridges, the attorney who drew up the deed and other instruments executed by Albert W. Foster, was first consulted as to the preparation of these papers and received his knowledge and directions as to what should be in them from the defendant, Clyde W. Foster. The evidence shows, however, that this attorney had never been the personal attorney of the defendant, Clyde W. Foster, and there is ample evidence to show that, in procuring him to make the deed and other instruments here involved, Clyde W. Foster was acting for and at the request of his father, Albert W. Foster. Not only was there no clear, satisfactory and convincing evidence that the deed in question was procured to be executed by the undue influence or fraud of the defendants, Clyde W. Foster and Clara Foster, but to so hold would be without the support of sufficient evidence and would be clearly against the great weight of the evidence.

As to the proposition that there was no consideration sufficient to support the deed in question, we think it sufficient to say that the appellants have utterly failed to sustain this contention. The evidence shows without dispute that, beginning about the year 1914, the defendants, Clyde W. Foster and Clara

Foster, had made a home for both Albert W. Foster and his wife, until her death in 1915; and that, at all times following the death of his wife and until his own death, Albert W. Foster had made his home with the defendants. Some claim is made that, up until a few years before his death, Albert W. Foster had performed the work of a farmhand and that he was, therefore, not indebted for his support to the defendants. While it is undoubtedly true that at times Albert W. Foster did perform the work of a farmhand, the evidence fails to show that such work was done by him continuously. In any event, Albert W. Foster himself did not consider that he had performed such an amount of work that he was in no way indebted to his son and daughter-in-law for his support. Much is said about the cancellation by Albert W. Foster of a $1,700 note held by him against Clyde W. Foster in the year 1929, and that this was payment in full for his support for the balance of his life. We think it sufficient to say that the circumstances surrounding the cancellation of this note clearly show that it was not contemplated as payment for anything in the future, and fail to show that it was even understood to be full payment for the past. Even as measured by a monetary standard, we think plaintiffs have failed to show that the deed in question was without consideration. But Albert W. Foster, who had lived with this son and daughter-in-law for more than twenty years, and had seen their family grow up around him, apparently was able to appreciate that there are values in life that cannot be measured in dollars and cents. The fact that not one of the plaintiffs or their witnesses either charged or intimated that defendants had not given Albert W. Foster a good home, and the fact that some of them frankly stated that he had been well cared for, would be sufficient to indicate that the home which he had been privileged to enjoy with these defendants was probably worth more, in his opinion, than all the property that he was conveying to them. Whatever the real reason may have been for Albert W. Foster remaining with the defendants and making his home with them for twenty years and until his death at the age of 85 years, instead of living with any of his other children or dividing his time among them, these other children were spared, at least, the expense that would have been incurred and the sacrifices that could not have been avoided in caring for their father during his declining years. We think there is ample

462

consideration shown by the evidence for the execution of the deed which it is here sought to set aside.

We find no reason for changing the decree and judgment of the trial court, and it is, therefore, affirmed.—Affirmed.

RICHARDS, C. J., and ANDERSON, KINTZINGER, PARSONS, STIGER, and SAGER, JJ., concur.