OLIVER TEDEMANDSON et al., Plaintiffs, Appellees, v. MARIE MORRIS et al., Defendants, Appellees; T. E. TEDEMANDSON and HARRY TEDEMANDSON, Cross-Petitioners, Appellants.

No. 44814.

DECEMBER 12, 1939.

E. M. Duroe and Whitney, Whitney & Stern, for plaintiffs-appellees.

C. E. Pendleton, for defendants-appellees.

Edson & Edson, for cross-petitioners, appellants.

SAGER, J.—The pleadings are voluminous covering as they do more than 50 pages of the abstract, but the issue is quite simple. Its decision evokes the pronouncement of no new principles, and since the result concerns only the parties themselves, we have purposely limited citations and greatly condensed facts upon which the decision is based. Since our reading of the record justifies the findings of fact on the part of the court, we adopt in substance a considerable portion thereof.

Halvor Tedemandson and Kristi, his wife, had eight children. Halvor died intestate on March 16, 1907, leaving 120 acres of land in Buena Vista county and two lots in the town of Rembrandt, Iowa. Kristi was the owner of 140 acres and by her husband's death, acquired a one-third interest in the real estate of her husband. The interests of some of the heirs were shifted by events happening after the death of the father, but such changes are not important here. On November 18, 1930, the widow Kristi executed two warranty deeds, one conveying certain property to Caroline R. Jacobs and Oliver Tedemandson; the other, a different tract to H. Marie Morris and

Clara B. Anderson. At the time these deeds were made, there was executed an escrow agreement so-called, which provided that the deeds should be left with the Sioux Falls bank, to be delivered to the grantees after the death of Kristi upon the payment of certain sums provided for by the agreement.

At the time of the trial, the sons, Theodore and Oliver, claimed that the mother was of unsound mind, or at least in such weakened condition mentally that she was under the influence of her daughter, Marie Morris; and that Marie stood in a confidential and fiduciary relationship to her mother so that the burden of proof as to the validity of these deeds was cast upon the grantees. A considerable part of the arguments of the parties is devoted to the question as to who had the burden of proof, and many authorities are cited to support the respective contentions. We find it unnecessary to decide this question because, as we read the record, if the burden was upon appellees, they have sustained that burden and established the validity of the deeds. It is urged that the age of the mother (84 years) was such as to make it probable that she was overreached and unduly influenced particularly by Marie Morris. Age, while an important consideration, is not at all conclusive. One passingly familiar with history can readily call to mind outstanding accomplishments in various fields of endeavor wrought by persons much older than this grantor.

The record suggests no mental weakness other than appears in the letters of Marie. These do speak of the periods of ill health of the mother, that she is growing more childish or childlike; but the letters as a whole merely convey the information that she is not well at times and is showing the weight of increasing years. Other parts of the letters indicate that notwithstanding periods of indisposition she was mentally alert and keenly interested in the doings of her children. There is no testimony that Kristi was of unsound or of feeble mind except perhaps the offhand expressions of one or both of the cross-petitioners that she wasn't competent to do business. On the other hand, there is direct and positive testimony to the contrary.

Doctor Sloan, her physician from 1927 to her death in 1934, testified:

"Mrs. Tedemandson enjoyed good health. At the time of her death she had what I diagnosed as pneumonia. She passed off very suddenly. In my opinion she was of sound mind during the time I knew her. She was able to understand or transact business. For her years she was a bright woman. Mrs. Anderson kept her neatly dressed. They had a car and took her riding. They made her a good home."

He said further that her inability to write in no way affected her ability to transact business.

Another witness testified that in appearance the old lady was very neat, always pleasant, disclosed nothing out of the normal for an old lady, and that she was especially well treated by Mrs. Anderson (one of the grantees), who was considerate and thoughtful of her. This witness never saw her do anything queer or out of the ordinary, and was of the opinion that she was of sound mind. The banker Stevens, who had a part in the transactions, while not laying a broad foundation upon which to speak on the subject, was of the opinion that she was of sound mind.

Among the exhibits certified up to this court are three photographs identified as being perfect likenesses of the mother Kristi. They picture a neat, keen and intelligent-looking old lady. It was hinted in oral argument that the old lady was photographed after being dressed up presumably for trial purposes, but since the pictures were taken 7 or 8 years before this controversy arose, that argument fails.

There was contention throughout the trial as to the admissibility of testimony of the heirs because of section 11257, Code, 1935, the so-called "dead man" statute. That much of the testimony in the record cannot be considered because of the statute, must be admitted but we do not stop to set it out. There is testimony from competent witnesses that there was nothing unusual about the mother's conversation or conduct, or that she ever appeared to be of weak or unsound mind. She was mentally alert for one of her years, and was much interested in current events. It is said that she could not sign her name or read English; but it is not denied she took and read two periodicals printed in Norwegian. She was a great student of the Bible, and had read Pilgrim's Progress in Norwegian (a feat probably not yet accomplished by her

children). She was further described in the very month in which the deeds were executed, as acting "as she had always done, bright and attractive. She was neat and rather proud. Frequently she would go to the mirror * * * and admire herself. She liked to have rouge on her cheeks just as well as any young lady would." She was never heard or seen by this witness, Marie Morris, to do anything that was irrational. "She was of sound mind." Other testimony along this line might be cited. The record excludes a finding of mental weakness or unsoundness of mind.

It is claimed there is evidence that a confidential relationship was availed of to overreach the old lady. Here again we think the trial court was right in refusing to accept cross-petitioners' views. It is true that the daughter Marie handled the affairs of the mother for many years in the capacity of agent, but there is no evidence that she sustained any personal profit thereby. On the contrary her attitude appears to have been of a helpful and efficient daughter. She with her sister Mrs. Anderson gave to their mother the best of care and attention for twenty-odd years, and no complaint was made about her actions until this controversy arose. We do not overlook our decisions covering the general principles here involved, and we cite a few of them. The court has sometimes set aside conveyances but it will be observed that in every one of the cited cases, and others, there is the element of mental unsoundness, of overreaching, or of a disposition of all or substantially all of the donor's or grantor's property, leaving no property upon which to depend thereafter for support. Another consideration of much weight is the opportunity for independent advice or the lack thereof.

In the case before us none of the elements spoken of appear. Unsoundness of mind is excluded. No fraud is disclosed, and no undue influence shown, unless it be in the fact that the daughters, Marie and Clara, accompanied their mother to the lawyer's office on the day the deeds were drawn. But there is no suggestion that the lawyer whom she consulted was anything but high-class, competent and disinterested. The mother was closeted alone with him when the papers were drawn. Full and complete opportunity was afforded for the giving of such advice as the situation seemed to call for. The

attorney was dead at the time of the trial and the court hadn't the benefit of his testimony. The deeds and the escrow agreement having been drawn in the lawyer's office, they were handed to her in an envelope. From the attorney's office, she walked to the bank, presented the papers to Stevens who examined and explained them to the mother, who said in effect that they were as she wanted them, and asked that the banker carry the agreement into effect after her death. Some contention is made that the daughters stood by at the time and exercised some influence over her by their presence. This argument is too farfetched.

There is then another element: Was the transaction an improvident one? The answer is in the negative. Since the deeds were not to be delivered until after her death, she retained what was in effect a life estate, thus assuring an income for her support. She was in the care of two daughters whose affection and faithfulness has been tested through many years. She was secure against the future; and the arrangement under all circumstances disclosed by this record appears to be a sensible one.

One other feature remains to be considered, and that is the alleged unfairness of this disposal of property as it concerns the son Theodore and his son, the cross-petitioners. Without going into the testimony, it is sufficient to say that they had fared well and their own interests had not been overlooked by them in their dealings with their mother.

The principles upon which this cause is determined are found in Curtis v. Armagast, 158 Iowa 507, 138 N. W. 873; Roller v. Roller, 201 Iowa 1077, 203 N. W. 41; Ennor v. Hinsch, 219 Iowa 1076, 260 N. W. 26; Foster v. Foster, 223 Iowa 455, 273 N. W. 165; Mastain v. Butschy, 224 Iowa 68, 276 N. W. 79; Gilligan v. Jones, 226 Iowa 86, 283 N. W. 434; and other cases cited in these decisions. The foregoing disposes of the motion to dismiss this appeal, and the motion is overruled.

We are fully satisfied that the findings of the trial court, and its decree based thereon, are supported by the record. The decree should be, and it is, accordingly, affirmed.—Affirmed.

OLIVER, C. J., and MILLER, HAMILTON, MITCHELL, STIGER, HALE, BLISS, and RICHARDS, JJ. concur.