ELIZABETH EARHART v. WATSON HOLMES, Appellant.

Confidential Relations: CONTRACTS. A conveyance of land by a niece, just over age, to her uncle, who was her guardian during her minority, and in whose honesty and judgment of values she had great confidence, will be set aside as fraudulent, where a grossly inadequate consideration was paid, even though he paid more than was offered by a third party, and the niece was determined to sell, though the guardian advised her not to.

*Appeal from Johnson District Court.*—HON. S. H. FAIRALL, Judge.

SATURDAY, APRIL 11, 1896.

ACTION in equity to cancel and set aside a deed of conveyance, on the grounds of fraud and undue influence and inadequacy of consideration, and for an accounting for rents and profits. Decree was entered in favor of the plaintiff. Defendant appeals.—*Affirmed.*

*Ranck & Wade* for appellant.

*Ewing & Bailey* for appellee.

GIVEN, J.—I. The following facts are undisputed: Elizabeth Loan inherited a tract of land on the Iowa river, estimated to contain one hundred and twenty acres. She being a minor, appellant, her uncle, was appointed guardian of her person and property, on April 1, 1889, and continued to act as such until April 22, 1890, when she arrived at the age of majority. On May 24, 1890, she executed and delivered the deed in question to the defendant, for the agreed consideration of seven hundred and twenty-five dollars, upon which payments were made as hereafter stated. Defendant went into the possession and use of the land, and cut and took timber therefrom. Said Elizabeth Loan, having intermarried with Samuel Earhart, brought this action, on February 26, 1892, entitled as above. Pending the action, Mrs. Earhart died, as did also her only surviving child, and Samuel Earhart, the sole heir, was substituted as plaintiff. It appears that Mrs. Earhart's purpose in selling the land was to secure funds with which to erect a dwelling on another tract that she owned. At the time the deed was executed, defendant delivered to Mrs. Earhart, as part of the consideration, a mare that was with foal, at the agreed price of one hundred and twenty-five dollars, defendant to pay for the service, to pasture the mare free of charge during that summer, and to take her back if Mrs. Earhart became dissatisfied. No notes, or other written evidence or security, was given by defendant for the remainder of the purchase price, but it was verbally agreed that defendant would make payment at any time Mrs. Earhart desired the money, which defendant was amply able to do. It is conceded

that defendant paid on the purchase price, four hundred and forty-seven dollars and fifty-four cents.

II.   Decree was entered finding that the deed in question "was obtained by fraud and undue influence, and for an inadequate consideration," and setting the same aside; also, finding that plaintiff was entitled to one hundred and twenty dollars per year, for the years 1890 and 1891, for the use of the lands, and nineteen dollars and twenty cents interest thereon, and twenty-nine dollars for fifty-eight cords of wood, and that there was due to the defendant, upon the purchase money paid by him, after deducting said one hundred and ninety-eight dollars and fifty-four cents, which was ordered to be, and was, paid to the clerk for the use of the defendant.   Defendant's first contention is that there is not sufficient evidence to warrant the setting aside of said deed.   The relief asked is upon the ground of fraud on the part of the defendant in procuring the deed, for that he procured it by undue influence and for an inadequate consideration.   The defendant was a man of mature years and experience in business.   He was an uncle of Mrs. Earhart, and the guardian of her person and property up to the time she attained majority, which was but a short time before the deed was given, at which time his account as guardian had not been settled.   Mrs. Earhart, being then single, lived for some time in the family of her uncle, and evidently had full confidence in him.   She had recently attained her majority, and was legally qualified to dispose of the land, and this she determined to do, notwithstanding the defendant and other friends advised against it.   She was no doubt of a very determined disposition, and in this matter at least acted in disregard of the advice of her friends,—a fact that was known to the defendant. Mrs. Earhart represented to the defendant that she was offered seven hundred dollars for the land, and

that she was determined to sell it, and wanted him to buy it, whereupon he offered to pay twenty-five dollars more than any other person would pay. Thereupon, without any effort to find one that would offer more than seven hundred dollars, the bargain was closed at seven hundred and twenty-five dollars. Mrs. Earhart was inexperienced in business affairs, and knew but little, if anything, of the value of lands in the neighborhood, as the defendant well knew.

The relation of guardian and ward did not exist between the parties to this deed at the time it was executed, and Mrs. Earhart was then legally competent to execute it. Appellant contends that, for this reason, the rule of the cases between guardian and ward, and trustee and *cestui que trust*, does not · apply, but concedes that, under the facts, the defendant may be held to the strictest good faith in the transaction. While it is testified that appellant advised Mrs. Earhart not to sell the land, it is evident that he was desirous of purchasing it, because of its proximity to lands owned by him, and made the offer he did, expecting it would be accepted. He knew that this young girl had full confidence in his honesty, and in his judgment of the value of the land, and that, while he might not dissuade her from selling it, any offer he might make was likely to be accepted. Surely, under the circumstances, good faith required that his offer should be at least the full value of the land. Fifteen witnesses, more or less familiar with the subject were examined as to the value of the land. Four of the eight, called by the plaintiff, gave, as their lowest estimate, ten dollars per acre, and the other four, twelve dollars. Of the seven called by the defendant, two gave six dollars, one six dollars and fifty cents, one seven dollars, and three, eight dollars per acre, as their lowest estimate. The price paid, was but a small fraction over the lowest estimate. It is true,

the acreage was reduced somewhat, by the wash of the river, but it is clearly manifest that the land was worth largely more than seven hundred and twenty-five dollars. We are not required to determine the value of the land, but simply to find whether or not the consideration paid was so grossly inadequate that the deed should be canceled.

Let it be conceded that, under the evidence, the deed should not be set aside upon either the ground of undue influence or of inadequacy of consideration taken alone, yet we think it entirely clear that, upon both taken together, it is shown that the deed was obtained by fraud. The principles of law applicable to the case, are familiar and undisputed. Therefore, we have not cited any authorities, and do not here notice those cited by counsel. We conclude that the decree setting aside the deed in question, is fully warranted by the evidence.

III. Defendant's motion to correct the decree by eliminating therefrom the two hundred and forty dollars allowed as rent, and the nineteen dollars and twenty cents allowed as interest thereon, was overruled, and of this defendant complains, upon the ground that there was no evidence showing the rental value. The evidence upon this subject is quite meager, but there is not an entire absence of evidence as to the rental value of the land. Mr. Harvard says: "I hardly know what it would rent for for cash,—$1 or $1.50 per acre. I do not know. I never rented any that way myself for cash." It is insisted that this witness shows himself incompetent to testify to the rental value of the land; that, therefore, his testimony should be disregarded; and that, there being no other evidence of the rental value, the allowance made is unauthorized. The witness, when asked as to the rental value, says, "I hardly know," then names a value, and adds, "I do not know. I never rented any

that way myself for cash." It is apparent, from his further statements, that Mr. Harvard was familiar with the location and quality of the land, and the uses for which it was available. We think that, although he had never rented for cash himself, he was competent to testify to the rental value, and that his testimony, in the absence of any conflicting evidence, is sufficient to sustain the allowance made for rent in the decree.

Our conclusion is that the decree of the district court should be AFFIRMED.