MILDRED SCHWARTZ JORDAN, Appellee, v. L. L. CATHCART, Appellant, and TODD CHRISTOPHERSON, RUSS W. CARTER, and the MERCHANTS' NATIONAL BANK, Defendants.

**Fraudulent conveyances:** EVIDENCE. Where a deed is procured
1  from one of inexperience for an inadequate consideration and
   as the result of an undue influence growing out of a confidential relationship, it will be set aside as fraudulent. Evidence considered and held to show fraud.

Innocent purchaser: FRAUD. One who purchases property with a knowledge that his grantor procured the title thereto through fraud in which he himself participated, is not entitled to protection as an innocent purchaser.

Fraud: BURDEN OF PROOF. One who purchases land from a member of his family with whom he occupies a confidential relation, has the burden of showing good faith.

Innocent purchaser: ATTORNEY AND CLIENT. An attorney who has knowledge that the title to property has been procured from his client by fraud, is not a good faith purchaser in immediately procuring a conveyance to himself from his client's grantor.

Fraud: ESTOPPEL. A grantor who through fraud was induced to convey her land for an inadequate price, is not estopped from setting up the fraud against a subsequent purchaser who had knowledge of and participated therein.

*Appeal from Woodbury District Court.*— HON. JOHN F. OLIVER, Judge.

MONDAY, FEBRUARY 13, 1905.

SUIT in equity to set aside conveyances of land made by plaintiff to defendant Christopherson, by Christopherson to L. L. Cathcart, and by Cathcart to Carter. Carter gave a mortgage back for part of the purchase price to defendant Cathcart, which mortgage is held by the defendant bank. The trial court set aside all the conveyances, protected Carter in his purchase from Cathcart, and rendered an account between plaintiff and defendants Christopherson and Cathcart. Cathcart alone appeals.— *Affirmed.*

*John R. Carter,* for appellant.

*F. B. Robinson,* for plaintiff, appellee.

*W. G. Sears,* for appellee Carter.

*Brown & Corbett,* for appellee Christopherson.

DEEMER, J.— None of the defendants save Cathcart

appeal.  Prior to the transactions in controversy, plaintiff was the owner of 90 acres of land in Woodbury county, worth at least $4,500.  She was a minor when she acquired title to the property, her grandfather being her guardian.  In June of the year 1897, and before attaining her majority, which was some time in November of the year 1898, she went to live in the family of the defendant Todd Christopherson, Christopherson's wife being her cousin.  Here she lived for more than two years as a member of the family, receiving no compensation for her services except her support.  Even before plaintiff became of age, Christopherson set about obtaining a conveyance of her Woodbury county land.  Christopherson, while not her legally appointed guardian, was her confidential adviser, counselor, and friend; and for some reason he, almost immediately upon her arrival at his home, began to poison her mind against her grandfather.  As a result of his machinations, he finally induced plaintiff to trade him the Woodbury county land for some property of his own in Homer, Neb., which was worth not to exceed $600.  The 'deal was finally consummated by an exchange of conveyances in March of the year 1899.  Prior to this time defendant Cathcart, who is an attorney at law, had been employed by plaintiff, at the suggestion of Christopherson, as her counsel, and he acted as such in various matters down until the commencement of this action.  Before obtaining his deed from plaintiff, Christopherson had already contracted with Cathcart to sell him the 90 acres for the sum of $1,500.  The deeds from plaintiff to Christopherson, and from Christopherson to Cathcart, were executed and filed for record on the same day.  Cathcart immediately arranged a sale of forty acres of the ninety-acre tract to defendant Carter for the sum of $1.600, receiving therefor the sum of $800 in cash, and a note for the balance, secured by mortgage, which mortgage was deposited in the Merchants' National Bank pending an attempt to perfect the title.  Practically all these transactions occur-

1. FRAUDULENT CONVEYANCES: evidence.

red before Christopherson received his deed from plaintiff.

On account of the gross inadequacy of the consideration, the confidential relations existing between plaintiff and Christopherson, and the array of circumstances showing actual fraud practiced by him upon the plaintiff, he, Christopherson, has not seen fit to appeal from the decree rendered by the trial court against him. And it is well that he did not, for rarely has so plain a case of fraud been presented to us. His conduct was most reprehensible, and the decree as to him is clearly correct.

Cathcart is the only one who questions the decision as to Christopherson, and this he does in but a half-hearted way. He claims, however, that his purchase from Christopherson was in good faith, and that there is no evidence of the conspiracy charged against him and his grantor. He admits that he was plaintiff's attorney down until the conveyance was made, but says that he advised against the transfer to Christopherson, that his advice was not taken, and that he was thereupon discharged by plaintiff as her attorney. The record convinces us, however, that these claims are unfounded. While acting as plaintiff's attorney, he, Cathcart, concealed from his client many things which it was important for her to know. Assuming that he objected to her conveying the land, we nevertheless find him profiting from the conveyance by taking title to the land at a figure very much less than its true value, thereby becoming the recipient of Christopherson's fraud. We are satisfied that he knew of Christopherson's scheme to defraud the plaintiff, and, while he may have advised against it, he seems to have been willing to profit thereby. That fine sense of honor and integrity which should have actuated him as a member of the legal profession seems to have departed before visions of profit, and, instead of doing everything in his power to thwart Christopherson in his nefarious scheme, he was already trying to get a share of the fruits thereof. Moreover, he had contracted to sell

2. INNOCENT
PURCHASER:
fraud.

a part of the land to Carter to make himself whole, even before he had secured title to the land. He had an abstract of title made at his own expense before he knew, as he says, that the plaintiff would consummate the exchange. He did not perform his duties as attorney for plaintiff; on the contrary, he concealed many facts which it was material for her to know, notably a proposition from her grandfather of great advantage to her. There are many things in the testimony showing actual fraud on the part of Cathcart; more, that he had knowledge of Christopherson's fraud, and still more, that he took advantage of his client's ignorance for the purpose of profiting himself.

Christopherson owed plaintiff the strictest good faith and the most conscientious conduct. Instead of that, he used his relationship for the purpose of deceiving and defrauding her. Even without evidence of actual fraud, the burden was upon him to show that the transaction was fair and free from deceit, and that he did not abuse his trust. *Spargur v. Hall,* 62 Iowa, 500; *Earhart v. Holmes,* 97 Iowa, 649.

3. FRAUD: burden of proof.

Cathcart, as plaintiff's attorney, was even under a more stringent rule, for he had the obligations of an oath pressing upon him. *Byington v. Moore,* 62 Iowa, 479. His acquisition of the property practically at the same time the deed to Christopherson was made is a strong circumstance, and is treated by many courts the same as a direct conveyance to the fiduciary. *Mc-Gar v. Adams,* 65 Ala. 106; *McKay v. Williams,* 67 Mich. 547 (35 N. W. Rep. 159, 11 Am. St. Rep. 597); *Cook v. Berlin,* 43 Wis. 433. Cathcart's conduct was such that it cannot be explained on any reasonable theory consistent with honesty and good faith. We shall not set forth the testimony, which to our minds clearly justifies this conclusion. It consists of many circumstances, some of them inconsequential in themselves, but all pointing to the same conclusion, and

4. INNOCENT PURCHASER: attorney and client.

taken as a whole, constituting indubitable proof of the alleged fraud.

But Cathcart says that plaintiff is estopped from questioning the conveyances, more particularly the one to him, for the reason that, as he says, he went to her to find out if she was satisfied with the exchange before parting with his money. That she then said to him that she was satisfied, and also promised to remain so. This was rather a queer transaction if he, Cathcart, purchased in good faith. We must be permitted to say that we doubt very much whether this occurred. But even if it did, there was no estoppel. Defendant Cathcart had full knowledge of the facts. Plaintiff knew little or nothing of them, was kept in the dark with reference to the exact nature of the transaction, and was told by Christopherson to keep the whole matter secret. She was relying both upon Cathcart and Christopherson as her trusted friends and advisers, and was presumably under their influence at this very time. Cathcart had already sold a part of the land for more than he was giving for the whole, so that he was safe in any event. These facts were of course all concealed from the plaintiff. The attempt to show an estoppel is but confirmation of the charge of fraud. If the transaction had been fair and honorable, no one would have thought of going to plaintiff for an approval of it before any challenge was made. If fraudulent, the statement said to have been procured from her would not be binding, for she was then presumptively laboring under the influence of both Cathcart and Christopherson. Moreover, the exact transaction was not explained to her. She was not told that Cathcart had purchased the land for $1,500, no part of which she was to get; nor was she informed of the fact that Cathcart had already sold forty acres thereof to Carter for more than he was to pay for the whole. The facts disclosed indicate fraud and conspiracy between Cathcart and Christopherson to defraud plaintiff out of her land, and for an almost equal distribu-

5. FRAUD: estoppel.

tion of the spoils. Our conclusions find support in *Harper v. Perry,* 28 Iowa, 57; *Earhart v. Holmes,* 97 Iowa, 649, and other like cases.

But one conclusion can be reached from this record, and that is that the conveyances to Christopherson and Cathcart were and are fraudulent and void. Carter's rights and also those of the bank were fully protected by the decree, and they have not appealed. No complaint is made of the accounting between the parties. The motions submitted with the case are each overruled.

The decree is in all respects *affirmed.*