BERTHA B. OSBORN et al., Appellants, v. MARY E. FRY et al.,
Appellees.

**EVIDENCE:** Burden of Proof—Confidential Relation. The mere show-
1  ing that the grantor and grantee in a deed of conveyance are related
by blood creates no presumption of confidential relationship such as
to cast upon the grantee the burden to establish the *bona fides* of the
transaction.

**DEEDS:** Validity—Undue Influence. "Influence" exercised over the
2  grantor by the grantee in a deed of conveyance in obtaining the deed
is not "undue" in a legal sense unless it submerges the free agency
of the grantor.

Headnote 1:  18 C. J. p. 424.  Headnote 2:  18 C. J. p. 236.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

JUNE 21, 1926.

Action to set aside a deed. The trial court dismissed the
plaintiffs' petition. The facts appear in the opinion.—*Affirmed.*

*Merner & Merner,* for appellants.

*Edwards, Longley, Ransier & Harris,* for appellees.

FAVILLE, J.—Appellee Mary E. Fry is the sister of appel-
lants. Appellee E. L. Fry is her husband. Laura J. Fox was a
resident of Cedar Falls, Iowa. She was the first cousin of ap-
pellants and of appellee Mary E. Fry. She died June 16, 1923.
At that time she was about seventy-six years of age, and had
never married. She executed a will on July 5, 1919, by the
terms of which certain specific bequests of personal property
were made, and also a specific bequest of $500 to appellee Mary.
The residue of her estate was bequeathed in equal shares to
appellants and appellee Mary. On May 18, 1923, the said
Laura executed a deed by which she conveyed to Mary her home-
stead in the city of Cedar Falls, together with the household
furniture, bedding, linen, and other articles located in said
house. This action was brought to vacate and set aside said

deed. Appellants are residents of the state of Oklahoma. Appellees are residents of Cedar Rapids, Iowa. The property in controversy is worth some five or six thousand dollars. The deed is attacked on the grounds of alleged mental incapacity, undue influence, and want of consideration.

I. It is contended by appellants that a sufficient confidential and fiduciary relation was established between the grantor and the grantee to place the burden of proof upon the grantee to show the *bona fides* of the transaction.

The mere kinship existing between the parties, that of first cousins, is not sufficient, in and of itself, to place the burden of proof upon the grantee in an action of this character. It is the

1. EVIDENCE: burden of proof: confidential relation.

well recognized rule in this state that the relationship between a grantor and a grantee may be so intimate, confidential, and fiduciary that the burden of proof may properly be placed upon the grantee, to show the *bona fides* of a transaction of this character. The rule is, of necessity, applied according to the peculiar circumstances of the particular case where the question arises. It is difficult to lay down a hard and fast rule in such cases, except the general rule that the circumstances of any particular case may show such confidential, fiduciary, and trust relation as that the burden to establish the *bona fides* of a conveyance that is attacked should rest upon the grantee. As illustrating our holding under a variety of circumstances, see *Good v. Zook*, 116 Iowa 582; *Eighmy v. Brock*, 126 Iowa 535; *Jordan v. Cathcart*, 126 Iowa 600; *Reese v. Shutte*, 133 Iowa 681; *Curtis v. Armagast*, 158 Iowa 507; *Johnson v. Tyler*, 175 Iowa 723; *Wahl v. Taylor*, 176 Iowa 353; *Wright v. Rohling*, 177 Iowa 368; *Flynn v. Moore*, 181 Iowa 1163; *Jacobson v. Byrd*, 185 Iowa 1107; *Pruitt v. Gause*, 193 Iowa 1354; *Johnson v. Johnson*, 196 Iowa 343.

Under the facts of this case, we find that neither the relationship of the parties nor the circumstances surrounding them at the time of the transaction establish such a confidential and fiduciary relationship as placed the burden upon the grantee to establish the good faith of the transaction in question. *Mallow v. Walker*, 115 Iowa 238.

II. A large amount of evidence was offered, upon the trial, on the question of mental incapacity. It is impossible, within the reasonable length of an opinion, to review this evidence in

detail. For a year or more prior to the execution of the deed in question, the grantor had been suffering with a malignant cancer. A severe operation had been performed upon her body, and the disease had made such inroads that enormous amounts of serum accumulated in the abdominal cavity, requiring that the patient be aspirated frequently. It appears that the decedent was aspirated more than seventy-five times between August, 1922, and her death in the following June. She suffered a great deal of pain. The disease made such inroads that the decedent finally became bedfast, and was under constant care. In regard to her mental condition at or about the date of the execution of the deed, the testimony of her attending physician was offered in behalf of appellants. After describing her physical condition, in answer to a direct question as to the impairment or unsoundness of her mind on the date the deed was executed, the physician summed the matter up as follows:

''I want to be very straight on this. I would say her mentality was erratic, meaning that she would have intervals of more or less judgment, and she might be regular at intervals, and intervals when she might be irregular,—more or less good judgment, combined with intervals of more or less poor judgment.''

Other evidence in behalf of appellants, on the question of mental incapacity, consists largely of the testimony of two ladies who were the neighbors of the grantor, and who frequently visited her during her last illness, and conversed with her. They described her physical suffering, and related conversations with the grantor after the execution of the deed. A careful examination of their testimony, together with all other testimony in the case, fails to disclose that the grantor was so lacking in mentality at the time of the execution of the deed as to be incapable of exercising the judgment and discretion necessary to give validity to the instrument. The evidence of other neighbors and the testimony of the scrivener who drew the deed and witnessed the signature, together with the evidence of medical experts, strongly tend to sustain the conclusion that, while the grantor was ill and suffering greatly from the insidious disease with which she was afflicted, she was not so lacking in mentality at the time of the execution of the instrument as to be incapable of executing the deed in question. We conclude, from the entire record, which we

have carefully examined, that the grantor was not mentally incapacitated from executing the deed.

III. The question of mental incapacity has an important bearing upon the question of undue influence. The evidence of the scrivener is to the effect that appellee asked him to prepare the deed; that she came to the scrivener's office

**2. DEEDS: validity: undue influence.** to see him about the matter, possibly three times. The first time she saw him was about three weeks before it was executed. She told him to prepare the deed, and to include therein not only the property, but the contents of the house; and he prepared the deed, and was accompanied by a notary, and went to the home of the grantor, where the deed was signed and acknowledged. He testified that, after executing and acknowledging the deed, the grantor repeated to him several times: "I haven't any home now. I haven't any home." Appellee was not in the room at the time the deed was signed, but was in the house. The scrivener testified that the grantor told him that she was executing the deed because Mrs. Fry was caring for and supporting her blind brother, the appellant Paul. The attending physician testified that, on the day following the execution of the deed, she told him that she had done a thing which had worried her a great deal, and that she hadn't slept; and that she asked him what he thought about it; that she said, "I deeded my house away, and I haven't a home, and I am just worried whether I did the right thing or not." She made similar statements on the same day to other witnesses, and also stated, in explanation of having made the deed, that:

"May [appellee] said it was to save taxes,—the inheritance tax,—and she could attend to the business a good deal better if she would let her have the property in her name."

In a letter to one of the appellants, written June 24, 1923, appellee Mary says:

"She [grantor] deeded the house and lot and contents to me. She asked Mr. Miller to write in the deed that she did it because Paul made his home with me, and she wanted to do something for him."

Before a solemn, written instrument, affecting the title to real estate, can be vacated on the ground of undue influence, it must appear that such influence was exerted as to overcome the will of the party executing the same. Mere importunity, sugges-

tion, and advice are not sufficient. In the recent case of *In re Will of Johnson,* 201 Iowa 687, we said:

" 'To be "undue," the influence must have been such as to destroy the free agency of the testatrix and make her the implement of her husband's craft, and make the instrument executed by her the will of her husband, rather than her own. It must operate to destroy her free agency, not at some time in the past, but at the very time and in the very act of executing the instrument. Solicitations, however importunate, cannot themselves constitute undue influence; for, though these may have a restraining effect, in that they persuade or induce the mind.of the testatrix to consent to the thing asked for, they do not destroy her power to freely dispose of her estate.' *Henderson v. Jackson,* 138 Iowa 326. See, also, *In re Estate of Townsend,* 128 Iowa 621; *Mallow v. Walker,* 115 Iowa 238; *Sutherland State Bank v. Furgason,* 192 Iowa 1295."

The cause is triable *do novo* in this court, and we have examined the record with great care. The deed was not obtained hastily nor secretly. The grantor undoubtedly felt under obligations to the grantee, who was the only relative with her during any portion of her last illness. As she expressed it to others, she felt grateful to the grantee for her care of the grantee's brother Paul, who is afflicted with blindness, and who had lived for some time at the home of the grantee. The fact of the giving of the deed was not concealed, and was promptly made known by the grantor to her physician and her immediate friends. The grantor possessed other property, the exact value of which is not disclosed by the record; but it is obvious that she did not strip herself of her estate by the execution of the deed. She was not dependent upon the grantee for advice in business matters, but attended to her own business affairs, and, even while suffering greatly from the malady that afflicted her, gave such care and attention to her business affairs as they required, and was particularly careful to see that her obligations were paid.

Viewing the case as a whole, we are confirmed in the opinion that the deed must be upheld as a verity, and that there is no sufficient evidence to justify annulling or canceling it. The instrument imports a consideration which is sufficient to support it, and which is not impeached.

The decree of the trial court was right, under the record in

this case, and meets with our approval and acquiescence. It is, therefore,—*Affirmed.*

DE GRAFF, C. J., and STEVENS and VERMILION, JJ., concur.